**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: 19-cv-24640-SCOLA/TORRES

RONALD M. SAINT-VIL,

    Plaintiff,

vs.

CITY OF MIAMI BEACH and
AUGUSTIN RODRIGUEZ,

    Defendants.

_____/

**DEFENDANT CITY OF MIAMI BEACH'S MOTION FOR FINAL**
**SUMMARY JUDGMENT AND ACCOMPANYING MEMORANDUM OF LAW**

Defendants, City of Miami Beach (the "City") hereby move pursuant to Fed.R.Civ.P 56 for final summary judgment against Plaintiff Ronald M. Saint-Vil. The motion is fully supported by the accompanying memorandum of law.

**MEMORANDUM OF LAW**

**INTRODUCTION**

This is a simple case with simple facts. On November 11, 2017, Plaintiff alleges in his Complaint (ECF No. 1) ("C.") that he was standing at the *cul de sac* at the end of a street outside a hotel where he had been working that night and recording video of Officers Rodriguez and Crews standing at the back of a police transport vehicle while they switched handcuffs on a prisoner they had taken out of the van. Everyone agrees to these facts up to this point.

The only material dispute in this case is how far away from the officers was Plaintiff standing? Far enough away that he could peacefully and lawfully video record the officers or too close for the safety of the officers who were dealing with a prisoner who was momentarily unhandcuffed and out of their van? Plaintiff claims that he was 12-15 feet away. However, his own

video of the incident shows that he approached to within about two feet of the officers.

At this point, all material disagreement ends and the remaining material facts are undisputed: Officer Rodriguez walked up to the Plaintiff and "calmly asked Mr. St. Vil if he could help him, to which Mr. Saint-Vil responded 'no, sir.'" C. 19. Officer Rodriguez eventually put his hand on Plaintiff's chest and said "you are coming with me" to arrest him for interfering with his prisoner transfer by standing within two feet of the transfer, but Plaintiff slapped Officer Rodriguez's hand away. Officer Rodriguez attempted to deploy his Taser to control Plaintiff, but was unsuccessful because Plaintiff pulled out the prongs. Plaintiff then turned and ran east onto the beach in an attempt to escape. After Officer Rodriguez called off a foot chase on the radio and requested emergency assistance, Officer Alfredo Garcia caught up with Plaintiff and deployed his Taser successfully for an initial five seconds, after which Plaintiff regained control of his bodily movements and continued to struggle. Officer Garcia then deployed his Taser a second time for an additional five seconds, during which Officers were able to finally successfully handcuff Plaintiff. Plaintiff suffered no serious injury and was transported to the Miami-Dade County jail, where he spent a single night. The charges against Plaintiff were later nolle prossed by the State Attorney's Office.

Based upon these facts, Plaintiff brings three counts against the City alleging very narrow facts regarding only actions of Officers Garcia and Crews. Summary Judgment on all three counts is appropriate here.

First, Plaintiff's state law battery claim arising solely out of Officer Garcia's second Taser deployment to the Plaintiff on the sand in Count III must be dismissed because Officer Garcia's testimony regarding the second Taser deployment is entirely uncontroverted -- Plaintiff testified at deposition that he does not have any recollection of being tased by Officer Garcia on the sand

at all – let alone that he was tased the second time without justification.

Second, Plaintiff's claim for negligent infliction of emotional distress in Count IX, also arising out of Officer Garcia's second deployment of his Taser against Plaintiff while on the sand of the beach, must be dismissed because Officer Garcia intended to deploy the Taser. Simply put, there is no such claim as negligent excessive force. Plaintiff's unmeritorious battery claim in Count III subsumes his negligence claim, requiring dismissal of Count IX.

Third, Plaintiff's claim for failure to train and supervise against the City in Count X, arising out of an alleged failure of the City to enact more or better training for Officer Crews on the duty to intervene if he witnessed unlawful officer conduct and for Officer Garcia on the proper use of a Taser, must fail because the decision regarding what training to provide to police officers is a discretionary act of the City that is protected by sovereign immunity. Also, the City's training program, in which both Officer Crews and Garcia participated, is accredited by CALEA and is *quadruple* the number of hours required by the Florida Department of Law Enforcement. While FDLE requires ten hours of annual mandatory retraining for each officer, the City has, since 2015, provided ten hours of quarterly retraining for a total of forty hours of retraining per year. This retraining includes annual training regarding the appropriate use of force and annual Taser recertification. Similarly, the City's supervision, through its internal affairs unit, is CALEA accredited and meets all industry standards. Plaintiff offers no evidence to the contrary. *See* Defendant City of Miami Beach's Statement of Undisputed Facts, para. 1-16.

**I.      Plaintiff's Battery Claim (Count III) Fails Because the Force Used to Arrest him was Justified as a Matter of Law.**

In Count III, Plaintiff seeks to hold the City vicariously liable for one single facet of the use of force used against him on the night of his arrest: the second Taser deployment by Officer Garcia that finally brought Mr. Saint-Vil under control and allowed officers to handcuff him after

the foot chase onto the sand of the beach. This claim fails because Officer Garcia testified -- without contradiction – that he deployed his Taser against the Plaintiff once when the Plaintiff stopped running on the stand, turned around, and faced Garcia with a bladed stance (indicative of an intent to resist arrest and fight). *See* Garcia Deposition ("Garcia Depo") pp. 62:3-63-13. Officer Garcia achieved neuromuscular incapacitation with the first five second deployment, but Plaintiff tensed his body and resisted handcuffing as soon as the deployment ended, so Garcia deployed his Taser for a second five seconds. Only after the second deployment were officers able to control and successfully handcuff the Plaintiff.

Specifically, Officer Garcia testified as follows:

Q. All right. So after Mr. Saint-Vil turns around you tase him; correct?

A. Yes.

Q. What happens next?

A. I achieve neuromuscular incapacitation, which basically means that his body tensed up and incapacitated and he fell to the ground.

Q. So why did you tase him again?

A. Because when the five-second cycle ended and myself and Rodriguez tried to put him in handcuffs, he continued to tense his body and throw his arms and legs not letting us put him into handcuffs. So I had to do a second five-second cycle to achieve compliance.

Q Okay.

A And I was finally able to achieve compliance. Garcia Depo. 67:9-25.

Plaintiff has offered no evidence of any kind to refute Officer Garcia's testimony. In fact, Plaintiff testified that he did not remember being tased by Officer Garcia on the sand at all, let alone that he had stop fleeing and resisting at the time Officer Garcia deployed his Taser a second time against him:

Q. So you're running on the beach and then what happens?

A. Well, I mean, they caught up to me when I got to the beach. They, you know, they got on -- they got on me, they put the cuffs on me. I -- I actually remember I blacked out at that time. I -- and when I woke up I had them surrounding me, that's what I do remember… See Saint-Vil Deposition ("Saint-Vil Depo.") pp.164:23-165:5.

Q. Okay. But you gave a series of events leading up to your being unconscious and the conversations that you remember word for word exactly, but you left out the fact that you never laid down and, in fact, you were stopped by a second officers tasering you; isn't that correct?

MR. TIRADO: Object to form.

A: I'm not aware of – I wasn't really made aware of how many times I was tased until after I spoke with my attorney.

Q. So as you sit here today, you didn't learn about the fact that you were stopped by a second officer who was tasing you as you were running away on the beach; is that correct?

…

A. Right, I didn't know that I was tased that many times. I didn't know. I know I was tased and I know I had blacked out, but I didn't know what was the reason for me passing out.

Q. Yeah, but you only said you were tased one time, and that was back at the van when the officer first approached you, correct?

A. I did say that I was tased at that time, but, you know, it was once they caught up to me on -- on the beach, like I said, I had passed out, I didn't -- I might have got tased and maybe passed out, I don't know. Saint-Vil Depo.166:21-168:11.

…

A: I didn't know how many times that I was tased, yes, sir.

Q. Okay. But –

A. That's exactly what I said. I said I don't know how many times I was tased until after because I -- I was -- I wasn't aware of everything that was going on because I got -- I was knocked out for a second and then when I awoke was -- when I woke up, that's when those officers were around me surrounding me. Saint-Vil Depo.168:24-169:9.

Q: You were asked about throwing up and you said didn't recall why you threw

5

>  up; is that correct?
>
> MR. SWITKES: Form.
>
> A: I did. I wasn't aware of -- I did answer I wasn't aware that -- why I threw up, yes.
>
> Q. Is it possible, in your opinion, that you may have thrown up because you were tased?
>
> MR. SWITKES: Objection to form.
>
> A: I believe that I may have thrown up because of the taser…. Saint-Vil Depo.265:16-266:4.
>
> ….
>
> Q. Well, you wouldn't be able to testify about what happened when you were unconscious, would you?
>
> A. Nope. Saint-Vil Depo.287:5-8.

Plaintiff's deposition makes clear that he has no independent recollection of being tased by Officer Garcia at all. He admits that he slapped Officer Rodriguez's hand away when Rodriguez tried to arrest him, admits that he pulled out the prongs from Rodriguez's original unsuccessful effort to tase him; admits that he fled on foot onto the sand of the beach, and then he remembers looking up from the ground and seeing somewhere between one and eight officers standing over him. Plaintiff does not claim that he felt any pain during the second Taser deployment or that he suffered any additional injury because of it.

Officer Garcia, on the other hand testified (as well Officer Rodriguez), that Plaintiff continued to resist arrest until he had been tased twice for five seconds each. He testified without contradiction that Plaintiff could only be handcuffed after the second Taser deployment. This uncontroverted testimony is fatal to Plaintiff's claim that the second Taser deployment was excessive. Summary Judgment as to Count III is appropriate in the City's favor.

**II. Plaintiff's Negligent Infliction of Emotional Distress Claim (Count IX) Fails Because There is no Such Claim as Negligent use of Excessive Force.**

In instances of excessive force, the violation of the ordinarily protected use of force by a police officer arises as a claim for battery, not negligence. *City of Miami v. Sanders*, 672 So. 2d 46, 48 (3rd DCA 1996). "Florida courts have consistently and unambiguously held that '[i]t is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.'" *Secondo v. Campbell*, 327 F. App'x 126, 131 (11th Cir. 2009) (quoting *Sanders*, 672 So. 2d at 48 ("The concept of a cause of action for 'negligent' excessive force is an oxymoron, and we decline to adopt an argument which would perhaps 'make us look like oxen or morons or both.' (internal citations omitted)); *Brown v. J.C. Penny Corp.*, 521 App'x 922, 924 (11th Cir. 2013); *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1264 (11th Cir. 2001) ("there is no cause of action for the negligent use of force"); *Feliciano v. City of Miami Beach*, 847 F. Supp. 2d 1359, 1367 (S.D. Fla. 2012) (same). Plaintiff's theory of liability for negligent infliction of emotional distress must, as a matter of law, be dismissed. *Asia v. City of Miami Gardens*, No. 14-20117-Civ-COOKE/TORRES, 2014 U.S. Dist. LEXIS 197493, at *14-15 (S.D. Fla. Aug. 15, 2014).

**III. Plaintiff's Failure to Train and Supervise Claim (Count X) Fails Because it is Redundant; Because the City's Training Program and Internal Affairs Policies are Discretionary Decisions Protected by Sovereign Immunity; and Because the Plaintiff has Presented no Evidence That the City's Training and Internal Affairs Policies Have not Been Properly Implemented.**

In Count X, Plaintiff alleges that the City negligently failed to properly institute training and discipline programs and policies to train and discipline City police officers. Specifically, the claim alleges that the City failed to properly train Officer Garcia as to the proper use of his Taser and failed to properly train Officer Crews to intervene to stop the allegedly unlawful arrest and Tasing of the Plaintiff. Summary judgment on this claim is appropriate for multiple reasons.

First, the claim is redundant where all parties agree that all involved officers were acting within the scope of their employment as officers of the Miami Beach Police Department when they acted on November 11, 2017. "A negligent supervision claim is allowed against an employer for acts of an employee committed outside the scope and course of employment." *Garcia v. Duffy*, 492 So.2d 435 (Fla. 2d DCA 1986); *Santillana v. Florida State Court System*, No. 6:09-cv-2095-Orl-19KRS, 2010 U.S. Dist. LEXIS 3049, 2010 WL 271433, at *11 (M.D. Fla. Jan. 15, 2010) (citing *Watson v. City of Hialeah*, 552 So.2d 1146, 1148 (Fla. 3d DCA 1989); *Garcia*, 492 So.2d at 438).

Here, Plaintiff has stated that all officers were acting within the scope of their employment as police officers, making a claim for negligent training and supervision inappropriate. This is so because Florida statute 768.28(9)(a) makes clear that the City is already vicariously liable for the tortious acts of its police officers performing their normal duties unless the officer acted "in bad faith or with a malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id*. If the officer did act with bad faith or malice, then the officer is individually liable and the City is not.

The gravamen of this statutory provision is that either the City or the individual officer is liable for an officer's tortious actions, but not both. Therefore, where, as here, all officers were acting within the scope of their employment, and neither Officer Garcia nor Officer Crews is alleged to have acted with bad faith, malice, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, the City would be vicariously liable for their tortious actions (if a jury so found) regardless of whether or not the City had adequate training or discipline policies enacted at the time of the incident. Therefore, evidence regarding improper training and discipline would be irrelevant and prejudicial and the claim for negligent training and supervision would add

nothing to Plaintiff's claim or any additional potential damages.

Moreover, Count X must be dismissed because the decision regarding what training to provide to police officers and how to discipline them is a discretionary function of the City that is protected by the doctrine of sovereign immunity. *Wynn v. City of Lakeland*, 727 F.Supp.2d 1309, 1316 (M.D. Fla. 2010). Decisions "regarding how to train its officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." *Lewis*, 260 F.3d at 1266; *Bussey-Morice v. Kennedy*, No. 6:11-cv-970-Orl-36GJK, 2013 U.S. Dist. LEXIS 2019, 2013 WL 71803, at *5 (M.D. Fla. Jan. 7, 2013).

Here, Plaintiff contends that the City "failed to supervise and train officers, like Officer Garcia, on the appropriate, lawful use of a Taser" (C. 92) and "failed to supervise and train officers, like Officer Crews, regarding the duty to intervene if and when they witness a fellow officer detaining, or attempting to detain, an innocent person, and/or using excessive force and, subsequently giving false testimony to support false charges against an innocent person." C. 91. These allegations clearly challenge the choices the City has made as to what procedures it should follow to properly train and supervise its officers. Therefore, the claim is barred by the doctrine of sovereign immunity. *See generally*, *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005).

Finally, even if Plaintiff's claim could be read as challenging only the implementation of its training and discipline programs, that claim would fail because the City has introduced undisputed evidence of its stellar training program and internal affairs unit. *See* Defendant City of Miami Beach's Statement of Undisputed Facts, ¶¶ 1-16. Plaintiff has not introduced any evidence to suggest that the City's training and supervision policies were not fully implemented as to both officers. Indeed, the City's training program, in which both Officer Crews and Garcia participated,

9

is accredited by CALEA and mandates <u>quadruple</u> the number of hours of training required by the Florida Department of Law Enforcement. While FDLE requires ten hours of annual mandatory retraining for each officer, the City has, since 2015, provided ten hours of <u>quarterly</u> retraining for a total of <u>forty hours of retraining per year</u>. This retraining includes annual training regarding the appropriate use of force and annual Taser recertification. *Id*.

It is undisputed that both Officers Crews and Garcia completed all training and retraining required by Miami Beach Police Department policies and were subject to supervision all required elements of the City's internal affairs programs and policies. *Id*.

For all of these reasons, summary judgment as to Count X is appropriate in the City's favor.

## **CONCLUSION**

For the foregoing reasons, final summary judgment should be entered in the City's favor on Counts III, IX, and X of Plaintiff's Complaint.

Dated this 3rd day of January, 2021.

Respectfully Submitted,

RAFAEL A. PAZ, ACTING CITY ATTORNEY
CITY OF MIAMI BEACH
1700 CONVENTION CENTER DR., 4TH FL
MIAMI BEACH, FLORIDA 33139
TELEPHONE: (305) 673-7470
FACSIMILE: (305) 673-7002
s/Robert F. Rosenwald
Robert F. Rosenwald, Esq.
E-Mail: RobertRosenwald@miamibeachfl.gov

*Attorneys for Defendant, City of Miami Beach*