## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 19-24640-Civ-SCOLA/TORRES

RONALD M. SAINT-VIL,

      Plaintiff,

v.

CITY OF MIAMI BEACH, and
AGUSTIN RODRIGUEZ,

      Defendants.

_____/

## OMNIBUS ORDER ON MOTIONS TO EXCLUDE EXPERT TESTIMONY

This matter is before the Court on the City of Miami Beach and Officer Agustin Rodriguez's ("Officer Rodriguez") (collectively, "Defendants") motions to exclude the testimony of Ronald M. Saint-Vil's ("Mr. Saint-Vil" or "Plaintiff") expert, Richard Masten ("Mr. Masten"). [D.E. 179]. Also before the Court is Plaintiff's motion to exclude the testimony of Defendants' expert, Ron Martinelli. [D.E. 178]. Plaintiff and Defendants filed timely responses to the motions to exclude their respective expert but neither party field a reply and the time do so has now elapsed. [D.E. 184, 187]. Therefore, the motions are now ripe for disposition.[1] After careful consideration of the motions, responses, relevant authorities, and for the reasons discussed below, Defendants' motion to exclude Plaintiff's expert [D.E. 179], and Plaintiff's motion to exclude Defendants' expert [D.E. 178] are **GRANTED** in part and **DENIED** in part.

---

[1] On February 9 and April 15, 2022, the Honorable Robert N. Scola referred the subject motions to the undersigned Magistrate for disposition. [D.E. 186, 193].

## I.     BACKGROUND

This is an action for tort and constitutional claims arising from the arrest of Mr. Saint-Vil by two police officers, Agustin Rodriguez and Alfredo Garcia, in Miami Beach during the early hours of November 11, 2017.  Plaintiff, who was in the process of leaving his post as a Disc Jockey assistant at the SLS Hotel in Miami Beach on the night of the incident, alleges that he was the victim of an unlawful arrest at the hands of Officer Rodriguez.  The parties provide divergent versions of the facts.  Defendants claim that Plaintiff was guilty of obstructing an ongoing arrest and committing battery upon Officer Rodriguez.  Plaintiff, on the other hand, denies these allegations and asserts that his arrest lacked probable cause and was carried out with excessive and unjustified force.

In support of their conflicting claims, the parties retained law enforcement policy and procedures experts to provide testimony on their behalf.  Although the experts reached different conclusions, they both opined on virtually the same central matters: (i) whether Plaintiff's arrest was predicated on probable cause; and (ii) whether Officer Rodriguez exerted excessive force in executing the arrest.  Plaintiff served Defendants with an initial expert report by Mr. Masten on January 29, 2021, and a supplemental report on October 11, 2021.

## II.    APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted).  The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them."  *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.  Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted).  The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005).  While this inquiry is flexible, the Court must focus "solely on

principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95.  It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)).  Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence."  *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

### III.   ANALYSIS

#### A. <u>*Defendants' Motion to Exclude Mr. Masten's Report and Testimony*</u>

Defendants ask this Court to strike Mr. Masten's opinions and preclude him from testifying at trial on the basis of a *Daubert* challenge.  Defendants' motion is

premised on the grounds that Mr. Masten is not qualified to provide testimony on the use of tasers; that his opinions are based on insufficient facts and data; and that some of his opinions are unduly prejudicial, while others constitute impermissible legal conclusions.

### 1. *Whether Mr. Masten May Offer Taser Related Testimony*

First, Defendants do not challenge Mr. Masten's qualifications to opine in this case in general.  Instead, Defendants assert that Mr. Masten should be banned from providing testimony about the propriety of Officer Rodriguez's use of a taser on Plaintiff, or "regarding tasers whatsoever," because "Masten has never personally used a taser, was never trained to use a taser while a law enforcement officer, is not taser certified, and never was."   [D.E. 179, p. 9].   This may be relevant for impeachment purposes, but it is not enough to strike the expert opinion altogether.

As Plaintiff rightly points out, Mr. Masten is not being retained as a taser expert.   Rather, Mr. Masten will provide general testimony regarding law enforcement policies, procedures, and the duties of police officers relative to arrest procedures, prisoner custody, use of force, and deployment of intermediate weapons.

To be sure, Mr. Masten has over 40 years of law enforcement experience, including experience as an officer in every rank and division of the Florida Police Department, as well as serving as Assistant Chief of Police.  [D.E. 140-25].  He has provided expert testimony on policing topics before several tribunals, and his *curriculum vitae* reflects that he has an extensive range of education, training, and experience as a law enforcement policy and procedures expert.   Accordingly,

Mr. Masten is qualified to provide expert testimony on police practices and procedures, including use of force and arrest procedures, in this case. The fact that Officer Rodriguez's use of force was manifested through the implementation of a taser, and that Mr. Masten has no personal experience with the use of tasers is of no moment under *Daubert*. *See A.B. v. Cnty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4430971, at *4 (S.D. Cal. July 31, 2020) ("Even though [the Expert's] personal experience with using a Taser is limited, such experience is not the only way to become qualified to proffer opinions regarding Tasers."); *Peck v. Carnival Corp.*, No. 16-20214-CIV, 2017 WL 7726728, at *3 (S.D. Fla. July 13, 2017) ("Rule 702 contemplates a broad conception of expert qualifications[,] as is evidenced by the advisory committee notes thereto 'emphasiz[ing] that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert.'") (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004)). As such, Defendants' motion is DENIED in this respect.

### 2. Whether Mr. Masten's Opinions Regarding the Impropriety of Plaintiff's Arrest Should be Excluded

As an initial matter, Defendants claim that Mr. Masten's opinions on the propriety of Plaintiff's arrest are due to be excluded because Mr. Masten misrepresents the legal standards governing some of Plaintiff's claims, and because his conclusions conflict with some of the facts in the record. We agree with Defendants regarding Mr. Masten's opinions on whether Plaintiff was arrested without probable cause or whether he was subject to battery and false imprisonment—as we explain further below, these are impermissible legal

conclusions—but not with respect to his general opinions regarding the propriety of Officer Rodriguez's conduct throughout the arrest.

It is well settled that experts are not qualified to provide legal conclusions, *see United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004), but that challenges premised on the application of legal standards do not belong in a *Daubert* motion. *See Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869-CIV, 2012 WL 13012778, at *7 (S.D. Fla. May 24, 2012) (holding that request to strike expert premised on an issue of law "is not properly presented in a motion in limine and therefore will not be addressed further."); *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law . . . .").

That said, we find that Mr. Masten is permitted to opine on the manner in which Mr. Saint-Vil was arrested. In other words, he may present his opinions on whether, under his adopted view of the facts, Officer Rodriguez properly followed de-escalation, use of force, and arrest practices and procedures when arresting Mr. Saint-Vil. *See e.g.*, [D.E. 172-2, p. 4] ("It remains that, in my professional opinion, the decision by Miami Beach Police Officer Agustin Rodriguez to arrest the plaintiff . . . and to apply the force of a Conducted Electrical Weapon charge, not once but twice, resulting in injury to Mr. Saint Vil, was in error."). Certainly, if a particular question violates this principle and seeks to elicit a pure legal conclusion, a timely objection may be made at trial and may be sustained if merited. Defendants are protected in this respect, but are not entitled at the same time to broad *in limine* relief for this

issue.  (Note, however, that we address more specific and targeted challenges to legal conclusions that the expert may be asked to draw below).

Defendants also assert that Mr. Masten's opinions as to Plaintiff's arrest are inadmissible because he has repeatedly acknowledged Defendants' version of the facts "to have occurred, conceding upon questioning that Officer Rodriguez did have probable cause to arrest Plaintff[.]"  [D.E. 179, p. 5].  This argument is flawed for purposes of this motion.  For starters, Mr. Masten's testimony cannot and does not establish whether a contested material fact in the lawsuit indeed occurred.  This is exclusively the realm of the trier of fact.  Further, as Mr. Masten's errata sheet provides, he conceded that the arrest was proper *only if* Officer Rodriguez's version of the facts is true.  *See* [D.E. 171-1, pp. 2-5].[2]  Of course, Defendants will have an opportunity to attack Mr. Masten's credibility on the witness stand about any alleged inconsistencies in his reports and deposition testimony.  These, however, are questions that bear on the credibility, not the admissibility, of his opinions.  *See Exim Brickell LLC v. Bariven, S.A.*, No. 09-CV-20915, 2011 WL 13131317, at *5 (S.D. Fla. Mar. 11, 2011) (refusing to exclude expert based on contradictions during deposition "because such contradictions or concessions should go toward the weight of the evidence put forth by the expert, not toward its admissibility."); *Bridges v. Enter. Prod. Co.*, No. 3:05CV786-WRB-LRA, 2007 WL 465738, at *5 (S.D. Miss. Feb. 8, 2007)

---

[2] On May 19, 2022, the Court entered an Order on the parties' motions for summary judgment, wherein it denied as moot Defendants' motion to strike Mr. Masten's errata sheet, holding that: "[b]oth the [deposition] transcript and the errata sheet remain on the record."  [D.E. 197, p. 1].

("The Court finds that the issues of whether [the expert] provided inconsistent statements [during his deposition] . . . relates to credibility, not admissibility.").

Finally, Defendants mischaracterize portions of Mr. Masten's deposition.  For instance, Defendants claim that in his deposition Mr. Masten also admitted that Plaintiff was a "feeing felon."  This statement, however, is belied by a plain reading of the deposition transcript.  [D.E. 166-1, 75:11-12] ("A. Well, I don't think Mr. Saint-Vil acknowledges that he was a fleeing felon.").  In sum, Defendants' arguments for the whole-sale exclusion of expert testimony regarding the impropriety of Plaintiff's arrest are unpersuasive.  Mr. Masten is qualified to opine on police practices and policies relating to arrest and use of force procedures, so he may offer his opinion on whether Plaintiff's arrest deviated from those procedures and practices.  *See Bakst as Tr. for Flaster v. Tony*, No. 13-CV-61411, 2019 WL 11497844, at *3 (S.D. Fla. Dec. 6, 2019) (observing that police practices expert may "describ[e] sound professional standards and identif[y] departures from them"); *Day v. Edenfield*, No. 5:19CV505-MCR/MJF, 2022 WL 972430, at *4 (N.D. Fla. Mar. 31, 2022) ("A police practices expert may present factors that might inform an officer's decision regarding standards such as probable cause or the use of force when making arrests").  Accordingly, Defendants' motion is DENIED in this respect.

### 3.   *Whether Mr. Masten Offers Speculative, Unhelpful, and Unduly Prejudicial Opinions*

Defendants also take issue with several of Mr. Masten's opinions because they are speculative, unduly prejudicial, and will not be helpful to the trier of fact.  Specifically, Defendants seek to strike Mr. Masten's opinions that (i) Plaintiff's arrest

was, in part, in retaliation for exercising his First Amendments rights; (ii) that dismissal of all charges against Mr. Saint-Vil is indicative of the impropriety of his arrest; (iii) that Plaintiff was the target of a racial insult following his arrest; and (iv) that there is a culture of misuse of tasers at the Miami Beach Police Department.

We agree with Defendants that these opinions are improper. First, any opinions that Plaintiff's arrest was in retaliation of his exercise of free speech, or that he was the target of a racial slur, would rely on improper inferences of intent and be based on a version of the facts that is contested. The parties have offered conflicting descriptions of the facts that triggered Plaintiff's arrest: Plaintiff claims that he was properly filming Officer Rodriguez conduct the arrest of a third party from a safe distance, and Officer Rodriguez alleges that, while recording the arrest, Plaintiff invaded the officers' physical space, creating a safety hazard for them. Although Mr. Masten may testify about the procedures that a reasonable officer would follow under his adopted view of the facts and in light of the applicable policing free speech guidelines, he cannot testify about Officer Rodriguez's state of mind or intent at the time of Plaintiff's arrest. *See Mills v. Owsley Cnty. Kentucky*, 483 F. Supp. 3d 435, 454 (E.D. Ky. 2020) (excluding expert opinions about "officer intent or motivation"); *Schroeder v. Cnty. of San Bernardino*, No. EDCV18427DMGJCX, 2019 WL 3037923, at *2 (C.D. Cal. May 7, 2019) (holding that experts may not offer their opinion on an officer's subjective intent); *Johnson v. Holmes*, No. 3:16-CV-00016, 2018 WL 1404410, at *4 (W.D. Va. Mar. 19, 2018) (holding that expert may testify as to generally accepted police procedures standards, but not about a police officer's intent). This

includes any opinion as to whether Officer Rodriguez arrested Plaintiff *in retaliation for* his exercise of First Amendment freedoms.  Such an opinion would improperly draw on inferences of intent that are off-limits for Plaintiff's expert in this case.

In other words, an expert can only offer opinion testimony under Rule 702 related to technical or complex issues in a case that would benefit from expert analysis.  She is not, however, entitled to engage in speculation or accusatory guesswork as to the state of mind of another person as a means of parroting a party's theory of a case.  Some of what is at issue in this aspect of the motion falls within this category.

For instance, Mr. Masten's opinion that dismissal of all charges against Mr. Saint-Vil is indicative of the impropriety of his arrest is highly speculative, as this opinion is not based on any studies, research, or published data.  To the contrary, as he conceded in his deposition, there is no objective evidence in the record that supports this conclusion.  He is simply casting a broad-brushed conclusion as to something that he has no particular expertise on.  That is both unhelpful and improper, and thus excludable under Rule 702.

Similarly, Mr. Masten's aspersion/opinion that there was a "culture" of misuse of tasers at the Miami Beach Police Department will not be helpful to the trier of fact and exceeds the scope of his expertise.  These opinions involve factual determinations derived from contested facts and are conclusions that the jury is more than capable of reaching on its own.  And that assumes that there is evidence to be presented at trial from which they could draw that conclusion.  But a sweeping conclusory opinion

from Mr. Masten that has no tangible evidentiary support does not satisfy that standard. *See Frazier*, 387 F.3d at 1266 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."); *Bakst as Tr. for Flaster*, 2019 WL 11497844 at *4 (excluding expert testimony about the existence of a "custom" of allowing political contributions to influence law enforcement decisions at the Sherriff's Office). As his deposition reveals, he has no particular expertise or frame of reference to draw this conclusion. Accordingly, Defendants' motion is GRANTED with respect to these conclusory aspects of Mr. Masten's opinion.

The same holds true with the aspect of the motion where Defendants seek to exclude Mr. Masten's assertions that Plaintiff was arrested without probable cause, that he was subject to battery and false imprisonment, and that he was arrested in violation of his First Amendment Rights. Plaintiff responds by noting that experts are allowed to make reasonable inferences from the evidence and provide testimony about those inferences. While it is true that experts are allowed to make inferences from the evidence, those inferences are not admissible when they constitute conclusions of law as opposed to factual-laden analysis of the record evidence that requires an expert to assist the trier of fact. What Defendants' motion is addressing is not that; it is targeting pure legal conclusions that this expert is no better equipped to answer than the trier of fact.

So, specifically, any opinions that Officer Rodriguez in fact lacked probable cause, battered, falsely imprisoned, or violated Plaintiff's First Amendment rights

are clearly ultimate legal conclusions that Mr. Masten is not qualified to provide and are outside the scope of proper expert testimony to aid the trier of fact.  Plaintiff may not offer such statements nor any other legal conclusions through Mr. Masten's testimony at trial.  *See Georgian v. Zodiac Grp., Inc.*, No. 10-cv-60037, 2011 WL 2530967, at *3 (S.D. Fla. June 23, 2011) (King, J.) ("A legal conclusion is an improper subject for expert testimony."); *Tubar v. Clift*, No. 05-CV-1154, 2009 WL 1325952, *3 (W.D. Wash. May 12, 2009) (precluding police practices expert from offering an opinion as to whether officer had "probable cause" to believe he was in imminent danger, whether he acted "unconstitutionally," and whether his use of force was objectively unreasonable, as these were conclusions concerning ultimate issues of law); *City of Waldo, Fla.*, 2016 WL 3545909 at *5 (noting that expert can discuss factors that inform an officer's decision regarding standards such as probable cause or the use of force but cannot state an opinion that the arresting officer in fact lacked probable cause).

### B.     *Plaintiff's Motion to Exclude Mr. Martinelli's Report and Testimony*

We now turn to Plaintiff's own *Daubert* motion [D.E. 178] that seeks to exclude portions of Mr. Martinelli's expert report and testimony.  Specifically, Plaintiff asks this Court to preclude Mr. Martinelli from testifying about: (i) how close Plaintiff was standing to Officer Rodriguez when he was arrested and on whether his camera was zoomed in while he recorded; (ii) whether Plaintiff was intoxicated when he was arrested, and whether he was subject to racial insults; (iii) whether Officer Rodriguez and Garcia were adequately trained; (iv) whether Plaintiff's expert is properly

14

qualified to provide testimony in this case; and (v) whether there is any evidence that Defendants are liable for false imprisonment or excessive force.

### 1. *Plaintiff's Alleged Intoxication or the Alleged Racial Slurs*

Defendants do not contest that both experts should be precluded from opining on whether Plaintiff was intoxicated on the night of his arrest, or whether he was in fact subject to racial slurs by any of the officers.  As such, Plaintiff's motion is GRANTED in this respect and neither expert is to provide an opinion about these factual matters.

### 2. *Plaintiff's Proximity to Officer Rodriguez*

We agree with Plaintff that Mr. Martinelli should not be allowed to provide an ultimate expert opinion on how close Plaintiff was standing to Officer Rodriguez when he was arrested, or on whether Plaintiff's camera was zoomed in when he recorded the video that preceded his arrest.

Besides the general statement in his expert report indicating that Mr. Martinelli has previously testified in multiple areas, including "recorded audio-video media interpretation and analysis," the record is devoid of any evidence that Mr. Martinelli is in fact qualified to provide an opinion as to Plaintiff's proximity to Officer Rodriguez based on the video evidence in this case.  The record is likewise devoid of evidence indicating that his opinion on whether Plaintiff's camera was zoomed in was derived from the application of methods or data generally used by experts in this field.  [D.E. 178-2, 11:12-12:11] ("Q. You didn't take any measurements or anything like that in this case?  A. No, because there was also testimony from Mr.

Vil, Officers Cruz and Rodriguez as to, as it relates to distances."). Further, as Plaintff points out, Mr. Martinelli's opinion regarding Plaintiff's proximity to Officer Rodriguez was based on factual assertions that are disputed by Plaintiff. *Id*. As noted earlier, the jury is more than capable of assessing these competing narratives and reach credibility determinations on its own.

In sum, while Mr. Martinelli is clearly an expert in the field of law enforcement and police practices, we are not convinced, based on the record, that he is qualified to opine on Plaintiff's definitive proximity to Officer Rodriguez based on this video, which opinion ultimately is not helpful to a jury that can draw its own conclusion on that score. *See Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368 (11th Cir. 2014) ("Expertise in one field does not qualify a witness to testify about others."); *Jones v. Lincoln Electric Co.*, 188 F.3d 709, 723-24 (7th Cir. 1999) (holding that metallurgy expert may testify about chemical composition of welding fumes but not about the medical effects of those welding fumes.); *United States v. Moore*, No. 3:20-CR-00029-SLG, 2022 WL 834381, at \*4 (D. Alaska Mar. 21, 2022) (limiting expert's testimony to his area of expertise). Accordingly, Mr. Martinelli's opinions on this topic are inadmissible.

### 3. *Whether Officers Rodriguez and Garcia were Adequately Trained*

Plaintiff also seeks to strike Mr. Martinelli's testimony regarding the adequacy of training received by Officers Rodriguez and Garcia. According to Plaintiff, this opinion is unreliable because it is based on what Plaintiff deems to be a fraudulent and unreliable evidence. We disagree. To the extent that such testimony is still

relevant in light of the Court's summary judgment Order, Mr. Martinelli may provide such testimony.

Mr. Martinelli is a qualified expert who has a wide range of experience and education in law enforcement and police practices and procedures, including extensive experience as a Supervising Field Training Officer and Peace Officer Standards & Training instructor.  [D.E. 178-1, pp.1-3].  Further, his opinions on the training received by Officers Rodriguez and Garcia in this case were derived from his review of the entire record, Miami Police Department Policies, Florida Law Enforcement Standards, and his decades of experience as police training instructor and supervisor.  *Id*. at 7-9.  *See Presley v. City of Blackshear*, No. CV507-094, 2008 WL 11417529, at *1 (S.D. Ga. Nov. 20, 2008) (allowing police practices expert to testify about the adequacy of the city's training of its police officers); *Lewis v. City of Chicago*, No. 04 C 3904, 2005 WL 8178978, at *3 (N.D. Ill. June 27, 2005) (same).

To the extent that Plaintiff disagrees with the veracity of the evidence relied upon by Mr. Martinelli in framing his opinion, including the credibility of the city's representative or Mr. Martinelli's familiarity with the Telestatus training system, these are objections that Plaintiff will be able to raise at trial for impeachment purposes. *See Mcgarity v. FM Carriers, Inc.*, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) ("[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under Daubert."); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("Questions relating to the bases and sources of an expert's opinion affect the

weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."). Accordingly, Plaintiff's motion is DENIED.

### 4. *Qualifications of Plaintiff's Expert*

Plaintff also seeks to preclude Mr. Martinelli from providing testimony that directly challenges Mr. Masten's qualifications to testify as an expert in the case. In his paragraph-long argument, Plaintiff conclusorily argues that allowing Mr. Martinelli to opine on Mr. Masten's qualifications would invade the gatekeeping function of the court. This is inaccurate.

The trial court's gatekeeping role under *Daubert* "is not intended to supplant the adversary system or the role of the jury: 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v. Alabama Power Co.*, 730 F.3d 1278, 1282 (11th Cir. 2013) (citing *Allison*, 184 F.3d at 1311-12); *see also United States v. Allen*, 208 F. Supp. 2d 984, 986 (N.D. Ind. 2002), aff'd, 390 F.3d 944 (7th Cir. 2004) ("Thus, defense counsel is free to inquire as to [Expert's] proficiency in the field as well as to challenge his other qualifications if counsel so wishes."); *Bachmann v. Hartford Fire Ins. Co.*, 323 F. Supp. 3d 1356, 1360 (M.D. Fla. 2018) (noting that litigant's expert may provide criticism of the opposing expert's qualifications). Therefore, Plaintiff's motion is DENIED in this respect.

### 5. *Testimony relating to Legal Opinions*

Finally, Plaintiff takes issue with Mr. Martinelli's opinion that, "there is no evidence that the City of Miami Beach is liable for the plaintiff's allegations of false imprisonment or excessive force during the encounter between plaintiff Saint-Vil and Officers Rodriguez and Garcia." [D.E. 178-1, p. 47]. This is clearly a legal conclusion that exceeds the scope of permissible expert testimony and, as such, it is inadmissible, as we discussed in more detail above with respect to Defendants' motion that challenged similar legal conclusions reached by Plaintiff's expert. *See Zodiac Grp., Inc.*, 2011 WL 2530967 at *3 ("A legal conclusion is an improper subject for expert testimony."). Accordingly, Plaintiff's motion is GRANTED in this respect. Neither expert is permitted to provide ultimate legal conclusions to the jury under Rule 702. Here, an ultimate conclusion that the City is not liable for false imprisonment is just that—a legal conclusion that is just as improper as the type of legal conclusions Defendants successfully challenged above. Again, however, that does not mean that the expert cannot testify as to what a reasonable officer would do when presented with a given set of circumstances. That testimony is perfectly appropriate, both for Plaintiff's expert as well as Mr. Martinelli.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' motion to exclude Plaintiff's expert [D.E. 179], as well as Plaintiff's motion to exclude Defendants' expert [D.E. 178] are **GRANTED** in part and **DENIED** in part as detailed in this Order:

A.   Defendants' Motion to Strike Plaintiff's expert [D.E. 179] is granted insofar as Mr. Masten will not be allowed to opine that (i) Plaintiff's arrest was in retaliation for or triggered by Plaintiff's exercise of his First Amendments rights; (ii) that dismissal of the charges against Plaintiff is indicative of the impropriety of his arrest; (iii) that Plaintiff was the target of racial slurs following his arrest; and (iv) that there is a culture of misuse of tasers at the Miami Beach Police Department. Likewise, Plaintiff may not offer ultimate legal conclusions through Mr. Masten's testimony at trial, including that Officer Rodriguez in fact lacked probable cause, battered, falsely imprisoned, or violated Plaintiff's First Amendment rights.  This Order obviously does not preclude purely factual-based expert testimony that may touch upon these issues at trial.  Thus, in all other respects, Defendants' motion is denied.

B.   Plaintiff's Motion to Strike Defendants' expert [D.E. 178] is granted insofar as Mr. Martinelli will not be allowed to opine on (i) how close Plaintiff was standing to Officer Rodriguez when he was arrested and on whether his camera was zoomed in while he recorded; (ii) whether Plaintiff was intoxicated when he was arrested; and (iii) whether Plaintiff was subject to racial insults.  Likewise, Defendants may not offer legal conclusions through Mr. Martinelli's testimony at trial, including opinions on whether Defendants are ultimately liable for false

imprisonment or excessive force.  This Order obviously does not preclude purely factual-based expert testimony that may touch upon these issues at trial.  Thus, in all other respects Plaintiff's motion is denied.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of June, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge